J-S44019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.N.D., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: J.D., MOTHER | |
| | No. 199 EDA 2017 |

Appeal from the Decree and Order December 1, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001086-2016, CP-51-DP-0001267-2015

| | |
|---|---|
| IN THE INTEREST OF: J.M.D., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: J.D., MOTHER | |
| | No. 200 EDA 2017 |

Appeal from the Decree and Order December 1, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001084-2016, CP-51-DP-0001268-2015

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **Filed August 4, 2017**

J.D. ("Mother") appeals from the decrees granting the petitions filed by the Philadelphia Department of Human Services ("DHS" or the "Agency") to involuntarily terminate her parental rights to her children, J.N.D., a son, born in October of 2013, fathered by an unknown individual, and J.M.D., a

daughter born in April of 2015, fathered by R.R.M. (collectively, "the Children"),[1] pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1),(2),(5), (8), and (b). Mother also appeals the orders granting DHS's petitions to change the permanency goals for the Children from reunification to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351. We affirm.

In its opinion, the trial court set forth the following factual background and procedural history of this case as follows:

> On May 11, 2015, the Department of Human Services received a Child Protective Services Report ("CPS") alleging that Children were transported to CUA [("Community Umbrella Agency")] on May 11, 2015 after Mother was observed pushing J.M.D. in a stroller while J.N.D. followed approximately twenty (20) feet behind Mother. Mother was falling on lawns and having trouble staying upright. It was alleged that when police made contact with Mother she was swaying side to side, slurring her speech, had glassy eyes and was unable to answer questions. On May 11, 2015, CUA obtained an Order for Protective Custody ("OPC") for the Children and the Children were placed in foster homes. On May 11, 2015, Mother was arrested and charged with the following criminal acts: Endangering Welfare of Children and subsequently tested positive for marijuana on May 13, 2015 and May 29, 2015. (Statement of Facts: Petition to Terminate Parental Rights).
>
> On May 29, 2016, during an adjudicatory hearing held on May 29, 2015, before the Honorable Jonathan Irvine, the Children were adjudicated dependent. On June 17, 2015, Mother tested positive for marijuana. On July 8, 2015, a Community Umbrella Agency . . . created for the Children their

---

[1] On December 1, 2016, the trial court also terminated the parental rights of R.R.M., the father of J.M.D., and the unknown individual who is the father of J.N.D. Neither father nor any unknown father has filed an appeal from the termination of his parental rights and goal change to adoption. None of these individuals is a party to the instant appeal.

initial Single Case Plan ("SCP"). The SCP goal was reunification. The parental objectives identified for the [m]other were the following: (1) to maintain a relationship with her [c]hildren through visitation; (2) to achieve recovery from drug/alcohol and comply with all court orders (3) to participate in the Achieving Reunification Center ("ARC") program. Subsequent to the meeting Mother tested positive for controlled substances including PCP [Phenocyclidine], benzodiazepines, amphetamines, buprenorphine on August 11, 2015, August 17, 2015, September 17, 2015, October 13, 2015, October 14, 2015, October 27, 2015, April 12, 2016, . [sic] (Statement of Facts: Petition to Terminate Parental Rights).

By September 30, 2016, Mother had not complied with her SCP objectives and Mother entered a guilty plea on the charge of Endangering the Welfare of her Children. On October 27, 2016, the Honorable Marvin Louise William sentenced Mother to be confined for a minimum of 11½ months [to] a maximum of 23 months. Thereafter, Mother was incarcerated at the Riverside Correctional Facility. (Statement of Facts: Petition to Terminate Parental Rights)

On November 10, 2016, CUA filed the underlying Petition to Terminate Mother's Parental Rights to Children.

Trial Court Opinion, 2/22/17, at 2-3.

The trial court held an evidentiary hearing on the termination/goal change petitions on December 1, 2016. Mother was not present at the hearing because she was incarcerated, but her counsel was present. N.T., 12/1/16, at 11. DHS presented the testimony of Kimberly Keene, the former CUA case manager from Turning Points for Children and DHS court representative, Andy Wilson. *Id.* at 2, 5, 14.

In decrees entered on December 1, 2016, the trial court granted the petitions to involuntarily terminate Mother's parental rights to the Children pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1),(2),(5), (8), and (b).

Additionally, in orders entered December 1, 2016, the trial court granted DHS's petitions to change the permanency goal for the Children from reunification to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.

On January 3, 2017,[2] Mother filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), with regard to the decrees and orders relating to the Children. On February 28, 2017, this Court granted Mother's motion to consolidate the appeals.

In her brief, Mother raises the following issues:

1. Whether the trial court's ruling to involuntarily terminate Appellant's parental rights to her children, J.N.D. and J.M.D., was not supported by clear and convincing evidence establishing grounds for involuntary termination?

2. Whether the trial court's decision to change J.N.D.'s and J.M.D.'s permanency goals from reunification with the parent to adoption was not supported by clear and convincing evidence that such decision would best protect the [C]hildren's needs and welfare?

Mother's Brief at 5.

_____

[2] We note that because December 31, 2016, fell on a Saturday, and the new year holiday was observed on Monday, January 2, 2017, Appellant had until Tuesday, January 3, 2017, to file her notice of appeal. **See** 1 Pa.C.S. § 1908 (stating that, for computations of time, whenever the last day of any such period shall fall on Saturday, Sunday, or a legal holiday, such day shall be omitted from the computation.); **Commonwealth v. Green**, 862 A.2d 613, 618 (Pa. Super. 2004).

We observe that Mother did not identify either Section 2511(a) or (b) in her concise statement of errors complained of on appeal and the statement of questions involved portion of her brief. In the summary of argument portion of her brief, however, Mother specifically raises the insufficiency of the evidence to support the termination of her parental rights under Section 2511(a)(1), (2), (5), (8), and (b). Mother's Brief at 15. We, thus, conclude that Mother preserved her challenge to the sufficiency of the evidence as to both Section 2511(a) and (b). *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (holding that this Court erred in determining that the appellant had failed to adequately develop, in his Rule 1925(b) statement, the claim that the evidence was insufficient to support his conviction). *Cf. Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, [19], 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re: R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As

- 5 -

has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [613] Pa. [371, 455], 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, [654-655], 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, [165,] 650 A.2d 1064, 1066 (1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on Section 2511(a)(2) and Section 2511(b), which provide as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal;

(2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

The Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 829. After revisiting its decision in *In re: R.I.S.*, 36 A.3d 567 (Pa. 2011), regarding incarcerated parents, the Supreme Court further stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d at

- 8 -

891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-831.

With regard to Section 2511(a), Mother claims that she loves the Children. Mother's Brief at 15. Mother states that she maintained her visitation with Children, underwent the court-ordered drug screens and substance abuse treatment in accordance with her DHS-established SCP parental objectives, maintained satisfactory housing for herself and the Children, and was able to financially support herself. *Id.* at 18-21. Mother further asserts that the evidence does not show that she is a parent who has an incapacity or unwillingness to timely rectify the circumstances that led to the removal of the Children from her and their placement in care. *Id.* at 19. Mother argues that the evidence did not establish that she failed to meet any substantial objective that would prohibit reunification. *Id.* at 18-21.

The trial court made the following findings regarding Section 2511(a):

The Children were adjudicated dependent on May 29, 2015. The record demonstrated Mother's ongoing unwillingness to provide care or control for the [Children] or to perform any parental duties and her failure to remedy the conditions that brought the Children into care. The documents and testimony discussed below provided the [c]ourt with clear and convincing evidence that termination of Mother's parental rights would be in the best interests of the Children.

This [c]ourt found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(1)[,] (2)[,] (5)[,] and (8)[,] and 23 Pa.C.S.A. § 2511(b). At the termination hearing on December 1, 2016 ("Hearing"), the CUA [r]epresentative testified that she had been on the case from May 11, 2015 until October 6, 2016. (N.T. December 1, 2016 p. 6 lines 1-20). The CUA [r]epresentative testified that Mother had failed her SCP objectives which included drug and alcohol treatment, parenting, supervised visits and mental health treatment. (N.T. December 1, 2016, page 7 lines 16-25). The CUA [r]epresentative testified that[,] after Mother was incarcerated[,] Mother had made no efforts to schedule any visitations with the Children at prison. (N.T. December 1, 2016, page 17, 1-7). At the hearing it was stipulated that Mother had consistently tested positive for controlled substances. (N.T. December 1, 2016, page 5 lines 1-20). Based upon this testimony elicited at the Termination Hearing as well as the documents in evidence, this [c]ourt found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1)[,] (2)[,] (5)[,] and (8)[,] as Mother had failed to remedy the conditions that brought [the Children] into care. Mother's unwillingness to cooperate with social services as to drug counseling, mental health counselling and her incarceration demonstrated Mother's inability or refusal to remedy the conditions that led to the [Children] being adjudicated dependent in 2015. The [c]ourt found the testimony of the CUA [r]epresentative to be credible.

Trial Court Opinion, 2/22/17, at 4-6 (footnotes omitted).

After a careful review of the record, we find that there is ample, competent evidence that supports the trial court's factual findings and that the court's conclusions are not the result of an error of law or an abuse of

discretion. *In re Adoption of S.P.*, 47 A.3d at 826-827. Mother's repeated and continued incapacity, abuse, neglect, and refusal has caused the Children to be without essential parental care, control or subsistence. Moreover, Mother was incarcerated at the time of the hearing. The competent evidence in the record supports the trial court's conclusion that Mother is unable to meet the Children's essential needs and will be unable to remedy that condition. We reject Mother's contention that the trial court should not have terminated her parental rights because she loves her Children, as a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

With regard to Section 2511(b), Mother asserts that the termination of her parental rights and the adoption of the Children would forever sever vitally important family relationships for the Children, especially with Mother; thus, termination of her parental rights cannot be in their best interests. Mother's Brief at 15, 24. Mother claims that DHS presented only minimal, superfluous evidence at the hearing regarding whether the termination would meet the best interests and developmental, physical, and emotional needs and welfare of the Children. *Id.* at 15, 23. Mother also argues that the CUA worker, who was a non-expert witness, and the newly-assigned DHS worker, who also was a non-expert witness, were incorrectly allowed, under Pa.R.E. 701 and 702, to offer opinion testimony regarding

the relationship and bond between Mother and the Children. *Id.* at 24. Mother asserts that these individuals improperly were allowed to testify that the Children would not suffer any adverse effects if Mother's parental rights were terminated and all relationship between Mother and the Children were permanently severed. *Id.* Mother argues that the record does not demonstrate that the trial court gave its primary consideration to the developmental, physical, and emotional needs and welfare of the Children, and, thus, we should reverse the trial court's order. Mother's Brief at 15, 24.

We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child under Section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing evidence in support of termination pursuant to Section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

- 12 -

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety and security needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

Our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "even the most abused of children will often harbor some positive emotion towards the abusive parent." *In re: T.S.M.*, 71 A.3d at 267 (quoting *In re K.K.R.-S.*, 958 A.2d at 535). The Supreme

Court instructed, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *In re: T.S.M.*, 71 A.3d at 267.

Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

At the December 1, 2016 hearing, Ms. Keene, the former CUA caseworker, testified that termination of Mother's parental rights to the Children would not cause them irreparable harm. N.T., 12/1/16, at 11, 12. She stated that the Children, ages three and one and one-half years, were not negatively impacted separating from Mother at the end of visits. *Id.* at 11. She further explained that the Children had been in foster care for most of their lives. *Id.* at 12. Ms. Keene testified that the Children were at the

- 14 -

time of the hearing in a pre-adoptive home through Turning Points for Children, and that they had a good relationship with their foster parents, who provided the Children with safety, stability, support, and met all of their general, medical, and developmental needs. *Id.* Ms. Keene stated that she believed the Children had a good bond with the foster parents. *Id.* at 12. She further stated that she had no reason to believe the Children would suffer irreparable harm from changing the goal from reunification with parents to adoption. *Id.* Rather, she believed that termination and the goal change were in their best interests. *Id.*

Mr. Wilson, who was assigned to the case on October 13, 2016, less than two months prior to the termination/goal change hearing, testified that he had observed the Children with their foster parents. *Id.* at 16-18. He stated that the Children had a strong parent/child bond with the foster parents, whom they call Mother and Father. *Id.* at 17. Mr. Wilson testified that the Children have not exhibited any signs of irreparable harm from the lack of contact with Mother, that they were safe, and their needs were being met by the foster parents. *Id.* at 17-18. Mr. Wilson explained that he believed that it was in the best interests of the Children to change their permanency goal to adoption. *Id.* at 17.

In its Rule 1925(a) Opinion, the trial court stated the following:

The [c]ourt further found there was no strong bond between Mother and Children so terminating the Mother's parental rights would not cause the Children irreparable harm and would be in

- 15 -

the best interests of the [Children] pursuant to 23 Pa. C.S.A. §2511(b). (N.T. December 1, 2016 page 11, lines 1-25).

## CONCLUSION

This [c]ourt, after careful review of the findings of fact and the testimony presented during the Termination Hearing on December 1, 2016, found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S. [§] 2511(a)(1)(2)(5) and (8). This [c]ourt further found[,] pursuant to 23 Pa.C.S. [§] 2511(b), that the termination of Mother's parental rights would not have a detrimental effect on the Children and would be in the Children's best interest.

Trial Court Opinion, 2/22/17, at 6-7.

After careful review, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-827. Accordingly, it was proper for the trial court to find that termination of Mother's parental rights would serve the Children's developmental, physical, and emotional needs and welfare, and that no bond exists such that the Children would suffer permanent emotional harm if Mother's parental rights were terminated. This Court finds no abuse of discretion in the trial court's termination of Mother's parental rights to the Children pursuant to Section 2511(b).

With regard to Mother's argument that Ms. Keene and Mr. Wilson were not qualified to offer their opinions on the Children's best interests, this Court has stated that, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer

evaluations as well." ***In re Z.P.,*** 994 A.2d at 1121 (internal citations omitted). "Additionally, Section 2511(b) does not require a formal bonding evaluation." ***Id.*** Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." ***In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008). Thus, we find Mother's argument lacks merit.

In her second issue, Mother argues that the trial court's decision to change the Children's permanency goals from reunification to adoption was not supported by clear and convincing evidence that such decision would best protect the Children's needs and welfare. Mother's Brief at 23. Although Mother raised this issue in her concise statements and statement of questions presented portion of her brief, she failed to support her argument concerning the goal change with any discussion or case law. ***Id.*** at 15, 23-25. Mother, therefore, waived the issue of goal change. ***See Chapman-Rolle v. Rolle***, 893 A.2d 770, 774 (Pa. Super. 2006) (stating that a failure to argue and cite to pertinent legal authority in support of a claim constitutes waiver of the claim).

Had Mother not waived a challenge to the change of the Children's permanency goal to adoption, we would find that the trial court properly

addressed the issue. The Pennsylvania Supreme Court set forth our

standard of review in a dependency case as follows:

> The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. *In re R.J.T.*, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 111 A.3d 1164, 1174 (Pa. 2015)

(internal quotation marks omitted).

This matter is controlled by the Juvenile Act, 42 Pa.C.S. § 6301 *et seq*.

When considering a petition for goal change for a dependent child, the trial

court considers:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S. § 6351(f)).

Regarding the disposition of a dependent child, Sections 6351(e), (f),

(f.1), and (g) of the Juvenile Act provide the trial court with the criteria for

its permanency plan for the subject child. 42 Pa.C.S. § 6351. Pursuant to

those subsections of the Juvenile Act, the trial court is to determine the

disposition that is best suited to the safety, protection and physical, mental,

and moral welfare of the child.

Here, the trial court found that the termination of Mother's parental rights and goal change to adoption, which would allow the Children to be adopted by their pre-adoptive foster parents, would serve the Children's best interests. After our careful review of the record in this matter, we would find no abuse of discretion in changing Child's permanency goal to adoption. **In re L.Z.**, 111 A.3d at 1174. We, therefore, affirm the decrees terminating Mother's parental rights with regard to the Children under Section 2511(a)(2) and (b), and the orders changing the Children's permanency goal to adoption.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2017